## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| LUIMY CABREJA, individually and on behalf of all others similarly situated,<br><br>                *Plaintiff*,<br><br>v.<br><br><br>THE SHERWIN-WILLIAMS COMPANY,<br><br>                *Defendant*. | Civil Case No.<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>JURY TRIAL DEMANDED |

Plaintiff Luimy Cabreja, on behalf of himself and all others similarly situated, complains and alleges upon information and belief based, among other things, upon the investigation made by Plaintiff and through his attorneys as follows:

### NATURE OF ACTION

1.     This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendant The Sherwin-Williams Company ("Sherwin-Williams" or "Defendant"), arising from its deceptive bait-and-switch scheme of covertly adding a so-called 4% "Supply Chain Charge" on sales receipts after purchases are consummated.

2.     Throughout its stores, and like all retailers, Sherwin-Williams provides prominent price displays for each of its products. Reasonable consumers like Plaintiff understand those are the <u>true and complete prices for the products</u>, exclusive of government-imposed taxes and discounts that a customer may be eligible for.

3.     But Sherwin-Williams' in-store displays are not the true prices for those products. In fact, the true prices are 4% higher than listed. That is because <u>after</u> consumers select in-store items based on listed prices and customize those in-store items with colors and other specifications, and after the purchase process is substantially complete, Defendant surreptitiously imposes a so-called "Supply Chain Charge" as a line item on receipts, amounting to an additional 4% added to

1

the in-store prices on all purchases. This late addition of a so-called "Supply Chain Charge" substantially changes the in-store prices upon which Plaintiff and other purchasers rely while shopping.

4.      Worse, the so-called "Supply Chain Charge" is never reasonably disclosed to consumers until it shows up as a line item on their receipts—*after the purchase is complete*.

5.      Moreover, the "Supply Chain Charge" is itself a misnomer and a deception. Defendant knows full well that average consumers do not understand the meaning of the term "supply chain" nor the indirect effect that economists understand it has on prices. Reasonable consumers are not economists.

6.      Sherwin-Williams intentionally chose a technical-sounding term in order to falsely convey to consumers that it was passing through an out-of-pocket cost it paid.  That was false. Sherwin-Williams did not pay the "supply chain" an additional 4%.  Rather, the fee disguises a simple truth:  Sherwin-Williams wanted to raise prices on all of its products, uniformly.

7.      Of course, Sherwin-Williams is free to raise prices as much as it chooses and for whatever reasons it chooses.  However, raising prices under the guise of a "Supply Chain Charge" was false and deceptive: here, the company raised prices without actually changing its listed prices in store, in order to make its products appear less expensive than they actually were.

8.      Defendant's triple-edged deception—first, touting in-store prices that are false; second, misdescribing its in-store price inflation as a "Supply Chain Charge"; and third, never reasonably disclosing the "Supply Chain Charge" until after a purchase is complete (and only then, only on a small line item on a receipt)—gives it an unfair advantage over honest sellers in the marketplace. The triple-edged deception makes it impossible for consumers to comparison shop meaningfully, and hinders the operation of a free and fair marketplace.

9.      Plaintiff seeks damages and, among other remedies, injunctive relief that fairly allows customers to decide whether they will pay Sherwin-Williams' Surcharge.

## PARTIES

10.     Plaintiff Luimy Esmeraldo Cabreja is a citizen of the State of Florida who resides

in Fort Lauderdale, Florida.

11.    Defendant Sherwin-Williams is incorporated in Ohio and maintains its principal business offices in Cleveland, Ohio.   Defendant regularly conducts business in the Southern District of Florida by operating at least twenty-five Sherwin-Williams stores located throughout south Florida.

## JURISDICTION AND VENUE

12.    This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.   Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because of the following: (1) the proposed class is comprised of at least 100 members; (2) Plaintiff is a citizen of Florida, making at least one member of the proposed class a citizen of a different state than Defendant; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

13.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Sherwin-Williams is subject to personal jurisdiction here and regularly conducts business in this district. Also, a substantial portion of the events or omissions giving rise to the claims asserted herein occurred in this district.

## COMMON FACTUAL ALLEGATIONS

**A.    Sherwin-Williams Omits and Conceals Material Facts About the Total Cost of Purchases by Deceptively Tacking on a Surcharge to All Items**

14.    On September 28, 2021, Sherwin-Williams's Chairman, President, and Chief Executive Officer, John G. Morikis, made a public statement to its investors that manufacturing costs were rising due to the limited availability of raw materials.[1]

---

[1] *Despite Strong Demand, Sherwin-Williams Lowers Third Quarter and Full Year 2021 Sales and Earnings Expectations Amid Escalating Raw Material Availability Challenges and Inflation Headwinds; Announces Agreement to Expand Internal Resin Manufacturing Capabilities,* Sherwin-Williams, September 28, 2021, available at https://investors.sherwin-williams.com/press-releases/press-release-details/2021/Despite-Strong-Demand-Sherwin-Williams-Lowers-Third-Quarter-and-Full-Year-2021-Sales-and-Earnings-Expectations-Amid-Escalating-Raw-Material-Availability-Challenges-and-Inflation-Headwinds/default.aspx, last accessed March 4, 2022.

15.     In other words, paint and other items were becoming more expensive to manufacture and produce—their price was increasing.

16.     Instead of raising the advertised prices of its individual items for sale, Defendant began tacking on a 4% Surcharge to all items purchased by customers at each of their Sherwin-Williams stores across the country.

17.     By furtively adding a hidden Surcharge onto each item offered for sale in its stores, Sherwin-Williams unfairly obscured the true price of each item.

18.     Reasonable consumers like Plaintiff understand the advertised prices are the <u>true and complete prices for the products</u>, exclusive of government-imposed taxes and discounts that a customer may be eligible for.

19.     As the Los Angeles times reported, "'Hidden surcharges undermine consumers' ability to shop around for the best value for their money,' said Jenn Engstrom, state director for the California Public Interest Research Group."

20.     Sherwin-Williams' scheme prevented consumers from effectively comparison shopping.

21.     Indeed, at its stores, Sherwin Williams prominently advertises the price of all of its products on its shelves and in other displays.

22.     These price representations are important: as Sherwin Williams knows, price is extremely important to consumers in choosing whether to buy a product or take their business elsewhere.

23.     For consumers shopping for paint specifically, a selection is made and the paint can then be customized by color or other characteristics.

24.     At checkout, the products are then scanned and totaled at the register. The scanned price matches the price displayed on the shelves. Tax is added, any coupons are deducted, and a total price is then displayed to customers. The customer pays.  A receipt is provided.

25.     Unbeknownst to consumers, however, Sherwin Williams quietly adds a 4% "Supply Chain Charge" at the register, at the same time it adds tax.

26.     The "Supply Chain Charge" is never reasonably disclosed to consumers until it shows up as a line item on their receipts—after the purchase is complete. This process fails to provide an adequate advance warning to customers that a Surcharge will be imposed on their purchases.

**B.     The Name of the Supply Chain Charge is Deceptive**

27.     Moreover, the "Supply Chain Charge" is itself a misnomer and a deception. Defendant knows full well that average consumers do not understand the meaning of the term "supply chain" nor the indirect effect that economists understand it has on prices. Reasonable consumers are not economists.

28.     Sherwin-Williams intentionally chose a technical-sounding term in order to falsely convey to consumers that it was passing through an out of pocket cost it paid.  That was false. Sherwin-Williams did not pay the "supply chain" an additional 4%.  Rather, the fee disguises a simple truth:  Sherwin-Williams wanted to raise prices on all its products, uniformly.

29.     In fact, the "surcharge" should simply have been labelled truthfully: "Price Increase Surcharge."

**C.     Numerous Consumer Complaints Confirm the Deception**

30.     Numerous customers report being surprised by the Surcharge. As the Los Angeles Times has reported,

> Hugo Granadino recently stopped by the Sherwin-Williams paint store in Inglewood to pick up some rollers and brushes. He's repainting the den of his South Los Angeles home. After the purchase, Granadino, 40, took a look at his receipt and was surprised to see a 4% "supply chain charge." There'd been no advance warning that a surcharge was being imposed — it was just quietly tacked on at the checkout counter.

https://www.latimes.com/business/story/2021-10-14/column-pandemic-paint-surcharge

31.     Likewise, an Arkansas news periodical reported the same issue:

> Camilla Kinslow bought paint from the Sherwin Williams in Russellville.
> After she left, she noticed an additional charge on her receipt: a 4% supply chain surcharge. "I was kind of frustrated, because I was like, "How can they do this? How can people just do that," said Kinslow.

5

https://www.thv11.com/article/news/local/customers-see-surcharges-supply-chain-impacts-businesses/91-5bc77cba-e302-4442-9a8f-f47a2448114b

32.     Similarly in Houston, the media has reported the same surprise by consumers:

Construction company owner Brennan Dougherty said he only noticed the extra cost when he looked at his receipt after buying paint. "Wow, they're just flat out, busting it out on the receipt, 4%," said Dougherty. "Obviously if it was a bigger job it affects you a lot more. But 4% on a million dollar job is $40,000."

https://abc13.com/supply-chain-surcharge-sherwin-williams-and-demand-costs/11229601/

33.     Numerous other complaints from online forums confirm consumers feel misled by

the imposition of the surcharge. Such as this deceived consumer on Yelp:

Rip off! They charged me an additional 4% [without] telling me (supply chain charge) I wouldn't mine [sic] paying extra if they didn't hid[e] it.

https://www.yelp.com/biz/sherwin-williams-paint-store-asheville 2?adjust_creative=mapquest&hrid=Rf4HBez5gd822SoS2jWYg&utm_campaign=yelp_feed&utm_medium=feed_v2&utm_source=mapquest (last accessed June 20, 2022).

34.     Also, consider this consumer complaint to the Better Business Bureau:

Sherwin Williams sneakily charged me a supply chain charge of 4 percent on each of my purchases. They did not inform me of this charge at the register nor did they have any signs up detailing the charge. They would not allow me to return the "premixed" paint. This is underhanded and wrong not to inform the customer of this charge and allow me to make a decision to void the purchase.

https://www.bbb.org/us/oh/cleveland/profile/producers/the-sherwin-williams-company-0312-6651/complaints

35.     Consumers have also flocked to Twitter to express their concerns over the sneakily tacked-on surcharge:

@SherwinWilliams why not be upfront about it? Just raise the base cost of the paint by 4%. If you try to sneak it onto the customer's bill without them knowing, they won't trust your product!

https://twitter.com/p_piotti/status/1449136968936267778?s=20&t=XWxnQ2m6WsHRwO5xzy_dKw

36.     As another consumer on Twitter aptly describes the deception,

It's *how* they're passing along higher costs that's at issue. Raising the list price is fairer to consumers. Tacking on a sneaky fee is not

https://twitter.com/Davidlaz/status/1449101569295716352?s=20&t=XWxnQ2m6WsHRwO5xzy_dKw

**D.    Plaintiff's Experience**

37.    Plaintiff Luimy Cabreja made a purchase at a Sherwin-Williams store located in Dania, Florida on September 27, 2021 in the total amount of $114.49.

38.    Relying upon price tags and displays provided in-store, Mr. Cabreja purchased 2 gallons of paint and a slip-resistant additive.

39.    Without his knowledge, Mr. Cabreja was assessed a 4% Surcharge for each item, in the total amount of $7.93.

40.    The following day, on September 28, 2021, Mr. Cabreja made another purchase at a Sherwin-Williams store located in Dania, Florida in the total amount of $233.10.

41.    Relying upon price tags and displays provided in-store, Mr. Cabreja purchased 5 gallons of paint.

42.    Again, without his knowledge, Mr. Cabreja was assessed a 4% Surcharge for each item, in the total amount of $8.40.

43.    At no time prior to either of his purchases did Mr. Cabreja view any sign or disclosure informing him that the 4% Surcharge would be added to his purchases.

44.    Accordingly, at no time prior to either of his purchases did Mr. Cabreja realize that Sherwin-Williams would furtively affix a price increase on his transactions.

45.    It was not until Mr. Cabreja examined his purchase receipts after he completed the transactions that he discovered a 4% Supply Chain Charge had been added to his purchases.

46.    Had Mr. Cabreja known that the Surcharge would be assessed on his purchases, he would not have purchased his paint from Sherwin-Williams.

<u>CLASS ALLEGATIONS</u>

47.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of himself and Classes of similarly situated persons defined as follows:

**Florida Class:**
All persons in Florida who, within the applicable statute of limitations preceding the filing of this action, made a purchase at a Sherwin-Williams store and was charged a 4% Surcharge.

**Nationwide Class:**
All persons who, within the applicable statute of limitations, made a purchase at a Sherwin-Williams store and was charged a 4% Surcharge.

48.     Excluded from the Classes are Defendant, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees, and members of such persons' immediate families, and the presiding judge(s) in this case and their staff. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including, without limitation, the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

49.     **Numerosity**:  At this time, Plaintiff does not know the exact size of the Classes; however, due to the nature of the trade and commerce involved, Plaintiff believes that the Class members are well into the thousands, and thus are so numerous that joinder of all members is impractical.  The number and identities of Class members is administratively feasible and can be determined through appropriate discovery in the possession of the Defendant.

50.     **Commonality**:   There are questions of law or fact common to the Classes, including the following, without limitation:

a.      Whether during the class period, Defendant deceptively engaged in a bait-and-switch scheme with customers regarding its 4% Surcharge that it assessed on all purchases made in its Sherwin-Williams stores;

b.      Whether during the class period, Defendant made material omissions regarding its 4% Surcharge;

c.      Whether during the class period, Defendant failed to sufficiently inform reasonable customers of its 4% Surcharge;

d.      Whether Defendant's alleged misconduct misled or had the tendency to mislead customers;

8

e.      Whether Defendant's alleged conduct constitutes violations of the laws asserted;

f.      Whether Plaintiff and the Classes were harmed by Defendant's misrepresentations and omissions;

g.      Whether Plaintiff and the Classes have been damaged, and if so, the proper measure of damages; and

h.      Whether an injunction is necessary to prevent Defendant from continuing to deceptively assess the hidden 4% Surcharge on customers' purchases at its Sherwin-Williams stores and/or to order Defendant to sufficiently disclose to customers the 4% Surcharge prior to making their purchases.

51.     **Typicality**:  Like Plaintiff, many other customers made purchases at a Sherwin-Williams store without understanding that the 4% Surcharge would be added to his transactions. Plaintiff's claims are typical of the claims of the Classes because Plaintiff and each Class member was injured by Defendant's false representations and omissions about the 4% Surcharge.  Plaintiff and the Classes have suffered the same or similar injury as a result of Defendant's false, deceptive, and misleading representations.  Plaintiff's claims and the claims of the Classes emanate from the same legal theory, Plaintiff's claims are typical of the claims of the Classes, and, therefore, class treatment is appropriate.

52.     **Adequacy of Representation**:  Plaintiff is committed to pursuing this action and has retained counsel competent and experienced in prosecuting and resolving consumer class actions.  Plaintiff will fairly and adequately represent the interests of the Classes and does not have any interests adverse to those of the Classes.

53.     **The Proposed Classes Satisfy the Prerequisites for Injunctive Relief**. Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive and equitable relief with respect to the Classes as a whole.  Plaintiff remains interested in making purchases at Sherwin-Williams stores in the future; there is no way for them to know when or if Defendant will cease deceptively misrepresenting the true cost of each

purchase transaction through affixing the 4% Surcharge.

54.     Specifically, Defendant should be ordered to provide customers with sufficient disclosures about the 4% Surcharge *prior* to their decision to make purchases at Sherwin-Williams locations and not when it is too late for the customer to rescind their purchase.

55.     Defendant's ongoing and systematic practices make declaratory relief with respect to the Classes appropriate.

56.     **The Proposed Classes Satisfy the Prerequisites for Damages**. The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Classes, and a class action is the superior method for fair and efficient adjudication of the controversy.  The likelihood that individual members of the Classes will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive, and equitable relief at issue for each individual Class member.

<u>**FIRST CLAIM FOR RELIEF**</u>
**Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")**
**Fla. Stat. § 501.201,** *et seq.*
**(Asserted on Behalf of the Florida Class)**

57.     Plaintiff repeats and re-alleges the above allegations as if fully set forth herein.

58.     This cause of action is brought under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* The stated purpose of the FDUTPA is to "protect the consuming public … from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

59.     Plaintiff and members of the Florida Class are "consumers" as defined by Fla. Stat. § 501.203(7).

60.     Sherwin-Williams engaged in "trade or commerce" as defined by Fla. Stat. § 501.203(8).

61.     Sherwin-Williams committed deceptive acts and practices in violation of the

FDUTPA by deceptively failing to disclose to customers the existence of the 4% Surcharge applied to all purchases made at Sherwin-Williams stores.

62.     Sherwin-Williams's actions regarding its Surcharge, as described herein, are deceptive acts or practices in the conduct of business trade or commerce of goods.

63.     The deceptive acts or practices and the sale of goods took place in this State because Sherwin-Williams operates in this State and because the purchase transaction took place in this State when Mr. Cabreja made his paint purchases at the Sherwin-Williams store. In short, the underlying nature of the deceptive transactions occurred in Florida.

64.     Fla. Stat. § 501.211(2) provides that "any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105."

65.     Plaintiff and the Florida Class have been injured by Defendant's violations of the FDUTPA.

66.     Defendant's misleading and deceptive conduct regarding its failure to disclose its 4% Surcharge applied to all purchases made at Sherwin-Williams stores, is a practice that that is likely to mislead a consumer acting reasonably under the circumstances, to the consumer's detriment.

67.     As an direct and proximate result of Defendant's misconduct, Mr. Cabreja and the Florida Class were injured and suffered actual damages.

68.     Defendant is liable to Mr. Cabreja and the Florida Class for damages in amounts to be proven at trial.

<u>SECOND CLAIM FOR RELIEF</u>
**Breach of Contract**
**(Asserted on behalf of the Classes)**

69.     Plaintiff repeats and re-alleges the above allegations as if fully set forth herein.

70.     Plaintiff and Sherwin-Williams have contracted for the sale and purchase of consumer products such as paint, as embodied by Defendant's pricing representations made at each of its stores.

71.     Defendant breached the terms of its contract with customers by charging an additional 4% more for each item purchased at its Sherwin-William stores, over and above the contracted for listed price of each item.

72.     Plaintiff and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the contract.

73.     Plaintiff and members of the Classes have sustained damages as a result of Defendant's breach of the contract.

### THIRD CLAIM FOR RELIEF
**Unjust Enrichment**
**(Asserted on behalf of the Classes)**

74.     Plaintiff repeats and re-alleges the above allegations as if fully set forth herein.

75.     This Count is brought solely in the alternative. Plaintiff acknowledges that the breach of contract claim cannot be tried along with unjust enrichment.

76.     To the detriment of Plaintiff and the Classes, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

77.     Defendant unfairly, deceptively, unjustly, and/or unlawfully seized and accepted said benefits which, under the circumstances, would be unjust to allow Defendant to retain.

78.     Plaintiff and the Classes, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on behalf of himself and the Classes seek judgment in an amount to be determined at trial, as follows:

(a)     For an order enjoining Defendant from continuing the unlawful practices set forth above;

(b)     For declaratory and injunctive relief as set forth above;

(c)     For an order requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(d)     For compensatory damages according to proof;

(e)     For punitive damages according to proof;

(f)     For reasonable attorneys' fees and costs of suit;

(g)     For pre-judgment interest; and

(h)     Awarding such other and further relief as this Court deems just, proper, and equitable.

## **JURY DEMAND**

Plaintiff hereby demands a jury trial on all claims so triable.

Dated: July 13, 2022                    **SHAMIS & GENTILE, P.A.**

By*/s/ Andrew J. Shamis*
                                        Andrew J. Shamis, Esq.
                                        Florida Bar No. 101754
                                        ashamis@shamisgentile.com
                                        Edwin E. Elliott, Esq.
                                        Florida Bar No. 1024900
                                        edwine@shamisgentile.com
                                        14 NE 1st Avenue, Suite 705
                                        Miami, Florida 33132
                                        (t) (305) 479-2299

                                        **EDELSBERG LAW, P.A.**
                                        Scott Edelsberg, Esq.
                                        Florida Bar No. 0100537
                                        Christopher Gold, Esq.
                                        Florida Bar No. 088733
                                        scott@edelsberglaw.com
                                        chris@edelsberglaw.com
                                        20900 NE 30th Ave., Suite 417
                                        Aventura, FL 33180
                                        Office: (786) 289-9471
                                        Direct: (305) 975-3320
                                        Fax: (786) 623-0915

                                        *Attorneys for Plaintiff and the Proposed Class*